# United States Court of Appeals

*for the*

# Third Circuit

Case No. 13-4260

EDDIE MCBRIDE; LEONARD RILEY, JR.; EDDIE KNIGHT;
CHARLES S. MILLER-BEY

– v. –

INTERNATIONAL LONGSHOREMEN'S ASSOCIATION,

*Appellant*

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT
OF DELAWARE, CASE NO. 1-01-CV-00005, JUDGE LEONARD P. STARK

## REPLY BRIEF FOR DEFENDANT-APPELLANT

MARRINAN & MAZZOLA MARDON, P.C.
26 Broadway, 17th Floor
New York, New York 10004
(212) 425-3240

*Attorneys for Defendant-Appellant*

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

ARGUMENT ............................................................................................................... 6

   I.   THIS COURT'S MANDATE DISPOSED
       OF KNIGHT'S CLAIM FOR DAMAGES
       AND FORECLOSED A FEE AWARD ON THAT CLAIM ........................................ 6

   II.  KNIGHT WAS NOT THE PREVAILING PARTY ON
       HIS CLAMS TO OVERTURN THE UNION DISCIPLINE ...................................... 10

      A.  KNIGHT CANNOT AVOID THE PREVAILING PARTY
          ANALYSIS SIMPLY BY POINTING TO THE "LAW OF THE CASE" .............................. 10

      B.  DAMAGES ARE AVAILABLE UNDER LMRDA § 101(A)(5) ..................................... 13

      C.  THERE WAS ONLY ONE DUE PROCESS CLAIM ........................................................ 17

      D.  KNIGHT CANNOT DISTINGUISH THE ILA'S CITED CASES ......................................... 21

      E.  THE REMAND DID NOT ALTER
          THE LEGAL RELATIONSHIP BETWEEN THE PARTIES ................................................. 23

CONCLUSION ........................................................................................................... 28

1003-079
37063

ii

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Bigbie v. Teamsters, Local 142*,
   1983 U.S. Dist. LEXIS 19882
   (N.D. Ill. January 20, 1983) ...................................................................15

*Briggs v. Pennsylvania R. Co.*,
   334 U.S. 304 (1948).............................................................................7

*Buckhannon Bd. & Care Home v*
   *W.Va. Dep't of Health & Human Res.*,
   532 U.S. 598 (2001)................................................................... 4, 5, 25

*Carey v. Piphus*, 435 U.S. 247 (1978) ................................................14

*Casey v. Planned Parenthood*,
   14 F.3d 848 (3d Cir. 1994) ....................................................................7

*Feltington v. Moving Picture Mach. Operators*
   *Union Local 306 of I.A.T.S.E.*, 605 F.2d 1251 (2d Cir. 1979),
   *cert. denied,* 446 U.S. 943 (1980)................................................. 12, 15

*Hardt v. Reliance Std. Life Ins. Co.*,
   336 Fed. Appx. 332 (4th Cir. 2009)....................................................23

*Hardt v. Reliance Std. Life Ins. Co.*,
   560 U.S. 242 (2010)..............................................................................24

*Helms v. Hewitt*, 655 F.2d 487 (3d Cir. 1981).........................................22

*Hewitt v. Helms*, 482 U.S. 755 (1987) ...............................................5, 22

*J.C. v. Mendham Twp. Bd. of Educ.*,
   29 F. Supp. 2d 214 (D.N.J. 1998)........................................................27

*Knight v. Int'l Longshoremen's Ass'n*,
   286 F. Supp. 2d 360 (D.Del. 2003)......................................................18

*Knight v. Int'l Longshoremen's Ass'n,*
  375 F. Supp. 2d 351 (D. Del. 2005)............................................................ 18, 19

*Knight v. Int'l Longshoremen's Ass'n,*
  527 Fed.Appx. 187 (3d Cir. 2013)..................................................................8, 11

*Knight v. Int'l Longshoremen's Ass'n,*
  724 F. Supp. 2d 480 (D. Del. 2010)....................................................................20

*Knight v. Int'l Longshoremen's Ass'n,*
  639 F. Supp. 2d 437 (D. Del. 2009)........................................................... 12, 24
*Newell v. Int'l Bhd. Of Elec. Workers,*
  789 F.2d 1186 (5th Cir. 1986) ............................................................................15

*Public Interest Law Ctr. of Phila*
  *v. Pocono Mt. Sch. Dist.,*
  491 Fed. Appx. 316 (3d Cir. 2012)......................................................................2

*Serafinn v. Int'l Bhd. of Teamsters,*
  *Local Union No 722,*
  2007 U.S. Dist. LEXIS 40731 (N.D. Ill. June 9, 2007)......................................15

*Stodghill v. Serv. Employees Int'l Union,*
  *Local 50,* 192 F.3d 1159 (8th Cir. 1999) ..............................................................17

*Sullivan v. Hudson,* 490 U.S. 877 (1989) ......................................................... 23, 26

*Swietlowich v. County of Bucks,*
  620 F.2d 33 (3d Cir. 1980) ......................................................................... 25, 27

*Vaughn v. Principi,* 336 F.3d 1351 (Fed. Cir. 2003)............................................23

*Waring v. Int'l Longshoremen's Ass'n, Local 1414,*
  665 F. Supp. 1576 (S.D. Ga. 1987) ....................................................................15

1003-079
37063

iv

**Statutes**                                                      **Page(s)**

29 U.S.C. § 411(a)(2)............................................................... *passim*
29 U.S.C. § 411(a)(5)............................................................... *passim*
29 U.S.C. § 412........................................................................16
29 U.S.C. § 529........................................................................18
42 U.S.C. § 1988......................................................................25

1003-079
37063

**INTRODUCTION**

The Appellant International Longshoremen's Association's ("ILA") initial brief established two main points.[1]  First, that the district court lacked jurisdiction to grant a new award of attorney's fees for the time expended on Knight's LMRDA § 101(a)(5) due-process claim.  The ILA demonstrated that a lower court must comply strictly with an appellate court's mandate.  This Court's mandate automatically nullified the previous award of attorney's fees when it reversed and vacated the judgments upon which that award was based.  The lower court had no jurisdiction on remand to consider a new motion for attorney's fees when this Court's mandate has not authorized it to do so.  ILA's brief at 8-13.

Second, the ILA demonstrated that, even if the district court had had jurisdiction, Knight would have not been entitled to fees for hours expended seeking damages and trying to overturn his union discipline, because he had not prevailed on **any** of the claims he had brought in that attempt—including his LMRDA § 101(a)(5) claim which was reversed by this Court.  In order to be a prevailing party, a plaintiff must be awarded an enforceable judgment on the merits of his claim that materially alters the legal relationship between the parties in a

---

[1] References to the Defendant-Appellant ILA's opening brief will be denoted as "ILA's brief at ___." References to the brief for Plaintiffs-Appellees will be denoted as "Knight's brief at __."  References to the joint appendix will be denoted as "A____."

way that directly benefits the plaintiff at the time of the judgment.  *See, e.g., Public Interest Law Ctr. of Phila. v. Pocono Mt. Sch. Dist.*, 491 Fed. Appx. 316, 319 (3d Cir. 2012).

Because Knight's claim was reversed and his award of damages was ordered vacated by this Court, when judgment entered, he was left with no enforceable legal or equitable judgment on the merits of the various claims he had brought to challenge the union discipline.  The interim legal rulings Knight received during the course of the litigation do not as a matter of law make Knight a prevailing party, since he did not obtain a final enforceable judgment on the merits.

Knight's brief does not disagree with this presentation.  Indeed, Knight presents no contrary authority.  Because Knight is unable to confront the ILA's showings head-on, he is forced to attack the ILA's brief using various fictions.   For example, Knight cannot argue that this Court instructed the district court to award attorney's fees for the hours he spent challenging his union discipline, so he pretends that there is an implicit instruction within the "spirit" of the mandate. This Court's most recent decision, which denied Knight's appeals, reversed his sole victory, and vacated the entirety of his damages, can hardly be construed as implicit instruction to award Knight a quarter-million dollar fee award.

Likewise, Knight cannot argue that this Court affirmed his victory under LMRDA § 101(a)(5), so he tries to obfuscate the test for a "prevailing party" by contending that there were two separate litigations with two separate LMRDA due-process claims and that this Court's mandate foreclosed attorney's fees for the second dispute, but not the first.

Knight pretends that the only relief he sought in his complaint and was available under the law was a new disciplinary hearing. Knight argues that the fact the district court remanded the matter back to the ILA was an enforceable final judgment that altered his legal relationship with the ILA even though that new hearing committee still ruled against him.

Throughout this entire litigation, Knight repeatedly argued that LMRDA § 101(a)(5) entitled him to reinstatement, restitution, and hundreds of thousands of dollars in compensatory and punitive damages. Such remedies are potentially available under LMRDA § 101(a)(5); Knight was simply unsuccessful in showing that he warranted such relief. Indeed, that is precisely why Knight is not entitled to a fee award; he had the opportunity to obtain the sort of relief that would have made him a prevailing party, but he failed to prove his case.

In arguing that the remand for a new hearing was final enforceable relief that altered the legal relationship of the parties, Knight ignores Supreme Court

precedent specifically holding that a remand for a new hearing is not enough to alter the legal relationship of the parties.  Knight also ignores the plain fact that the remand never resulted in his obtaining any of the relief he sought in his complaint: reinstatement, compensatory and punitive damages, restitution, back pay.

Knight goes so far as to argue that the fee award he received from this Court in 2006 rendered the rest of his case bulletproof, ensuring that he would be entitled to an award of fees for all the hours he spent on his disciplinary claims regardless of whether he actually prevailed on his claims at the end of the day.  In that regard, by asking the Court to look back at the interlocutory orders that occurred years ago, Knight is doing exactly what the Supreme Court in *Buckhannon Bd. & Care Home v. W.Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001), wanted to avoid when it specified that courts should limit their inquiry to the final judgment on the merits.  *See Buckhannon,* 532 U.S. at 609.

Knight expended thousands of hours in this litigation trying to overturn his union discipline:  seeking reinstatement to office, restitution of his $500 fine, back pay, front pay, lost-opportunity damages, injured-reputation damages, emotional-distress damages, and punitive damages.  Now he is worried that he will not be able to recover for all that time, but the truth is he only has himself to blame for needlessly increasing his billable hours by re-litigating claims and issues that were

already dismissed. For example, although Knight's § 101(a)(2) free speech claim was dismissed on summary judgment, Knight attempted to re-litigate it at the first trial, then tried (futilely) to re-litigate it again on the first remand and raised it yet again on the second appeal.

Knight achieved no genuine success on his LMRDA union discipline claim. He recovered no damages; secured no declaratory or injunctive relief; obtained no consent decree or settlement in his favor; received nothing of value of any kind, certainly none of the relief sought in his complaint. Knight sought almost $500,000 in damages, but instead left the courthouse empty-handed: "That is not the stuff of which legal victories are made." *Buckhannon*, 532 U.S. at 605, *quoting Hewitt v. Helms*, 482 U.S. 755, 760 (1987). Under no scenario did the outcome materially alter the legal relationship between Knight and the ILA. Before the lawsuit, Knight was suspended from office and he had paid a $500 "fine." After the lawsuit, Knight was still suspended, the fine was intact, and he had not obtained any damages. It is untenable to say that Knight prevailed and should recover attorney's fees.

1003-079
37063

5

# ARGUMENT

## I.

### THIS COURT'S MANDATE DISPOSED
### OF KNIGHT'S CLAIM FOR DAMAGES
### AND FORECLOSED A FEE AWARD ON THAT CLAIM

Knight would have this Court believe that this Court's decision, when read together with the mandate, implicitly instructed the district court to consider a new award of attorney's fees.  This argument borders on the absurd.  Not surprisingly, Knight cannot cite a single case where an appellate court reversed a plaintiff's victory on a claim and remanded for vacatur of **all** damages on that claim, but still implicitly remanded for an award of fees based on the very judgment and damages that it had just reversed.

Knight's reasoning about the mandate rule is like the old joke about not eating the daisies: unless the mandate expressly forbids something, then it evidently is allowed.  According to Knight, because the mandate did not specifically prohibit a new award of fees on the failed LMRDA due-process claim, there was nothing to prevent the district court from granting such an award.  As the ILA already established, however, the mandate rule is exactly the opposite.  A lower court has no jurisdiction to act on remand unless specifically authorized to

do so by the mandate.  *See Briggs v. Pennsylvania R. Co.*, 334 U.S. 304, 306

(1948).

In attacking the ILA's argument on the mandate, Knight attempts to

distinguish half of the ILA's cases, ignores the remaining cases, and offers none of

his own.[2]  All Knight does is state the obvious that a lower court must "implement

both the letter and spirit of the mandate, taking into account the appellate court's

opinion and the circumstances it embraces."  *Casey v. Planned Parenthood*, 14

F.3d 848, 857 (3d Cir. 1994).  Unfortunately for Knight, nothing about the spirit of

this Court's opinion shows that Knight had prevailed on his due process claim—or

any other claim related to overturning his discipline.

This Court's opinion was a final resolution of Knight's disciplinary claims,

and a final resolution that was unfavorable to Knight.  First, this Court rejected

Knight's attempt to resurrect his § 101(a)(2) free speech claim, which had

---

[2] Knight makes a facile attempt to distinguish the cases cited by the ILA.  In all those cases, the parties seeking attorney's fees (or interest) on remand were doing so because they had received a favorable appellate decision.  Even then, the awards were rejected because they were not explicitly authorized by the mandate.  Knight is the only party who has the temerity to argue that he is entitled to attorney's fees after having received an **unfavorable** decision.  For instance, Knight tries to distinguish *Briggs*, 334 U.S. at 304, but in that case the appellate court ruled in favor of the plaintiffs and directed entry of judgment; on remand the district court thought it had implicit authority to add interest.  The appellate court ruled that the award of interest was without authorization in the mandate, and the Supreme Court agreed.

previously been rejected three times by the district court.  *Knight v. Int'l Longshoremen's Ass'n,* 527 Fed.Appx. 187, 188-189 (3d Cir. 2013).  This Court also noted that Knight's § 101(a)(2) claim was waived by Knight.  *Id.* Accordingly, this Court ruled that Knight was not entitled to damages for his lost wages as the local's financial secretary.  This Court also rejected Knight's argument that his free speech claim was part of his claim that Article XXVII of the ILA Constitution was facially overbroad.  Rather, this Court held that the overbreadth claim was entirely separate from Knight's disciplinary claims.  *Id.*

Then this Court considered the ILA's appeal and granted it by reversing the district court's ruling on Knight's LMRDA § 101(a)(5) due process claim.  *Id.* at 190-191.  This Court's judgment added the instruction to vacate Knight's award of damages and taxed costs against Knight.  (Mandate of U.S.C.A. at 2, 6/25/2013, Case 1:01-cv-005-LPS, Doc. #233).

Given the completely adverse nature of the rulings against Knight, he cannot seriously contend that this Court's decision contains an implicit instruction for the district court to consider and grant attorney's fees for the time Knight spent trying to overturn his discipline or obtain damages.  In fact, the district court erred because it acted directly contrary to the terms and spirit of this Court's mandate. Knight did not even obtain a nominal victory.  He left this court empty-handed.

Knight also relies on the fiction that the original fee award would have remained in place if the district court had no authority to modify it. To do so, Knight ignores the multiple cases cited by the ILA showing that the reversal of a judgment automatically nullifies a subsequent award of attorney's fees. *See* ILA's brief at 11-12. Knight cites no contrary case law. There was no need for the appellate mandate to specifically order nullification of the fee award; that happened when the decision on the merits was reversed.

Knight's argument is further undermined by his own behavior. If he truly believed that this Court's mandate gave the district court jurisdiction to grant him a new award of attorney's fees on the claim he had just lost, he would have waited until the mandate issued and filed a proper motion for attorney's fees. Instead he rushed to the district court before the mandate had even been transmitted by this Court, and filed a motion to proceed against the ILA's supersedeas bond based upon the fee award that predated this Court's reversal. Then in the reply brief on that motion he changed his requested relief and asked the district court for a new award of attorney's fees. Now Knight has the temerity to argue that the ILA should be foreclosed from challenging his fee award because supposedly certain arguments, such as Knight's obligation to refund his interim fee award, were not raised below. The ILA was never given the opportunity to make any arguments in

1003-079
37063

9

opposition to Knight's new fee request in the district court. And the ILA had no

opportunity before remand to argue that point, because the ILA could not argue

that Knight had not prevailed on his due process claim until this Court reversed the

lower court's decision.

In that regard, Knight also makes the puzzling assertion that the ILA even

now has not pointed to any aspect of his fee calculations that was incorrect.

Knight's brief at 36. Knight seems to be deliberately missing the point. **All** of his

fee calculations are incorrect because he insists on including the hours he expended

on claims to overturn his discipline and pursue damages even though he did not

prevail on those claims.

## II.

### KNIGHT WAS NOT THE PREVAILING PARTY ON HIS CLAIMS TO OVERTURN THE UNION DISCIPLINE

### A.    Knight Cannot Avoid The Prevailing Party Analysis Simply By Pointing To The "Law Of The Case"

Faced with overwhelming authority that he is not a prevailing party, Knight

argues that he need not even show that he prevailed on his disciplinary claims

because this Court's award of attorney's fees in 2006 apparently ensured he was

entitled to a fee award regardless of the ultimate outcome of the lawsuit. Knight

cites to no case law where a plaintiff who obtained no damages or injunctive relief

was still awarded attorney's fees based upon an earlier appeal.  Knight's argument

on the law of the case is also one of several instances where Knight tries to

bootstrap his unsuccessful disciplinary claims to the plaintiffs' LMRDA Section

105 claim and the claim that the ILA Constitution was overbroad.  As this Court

has already held, the claims are unrelated.  *Knight*, 527 Fed.Appx. at 189 ("Knight

maintains that his claim for back-pay was part of his claim that the ILA

Constitution was overbroad.  This is not so.").

Knight is eager to conflate the claims because almost all the hours expended

in this litigation were on Knight's unsuccessful efforts to overturn his discipline

and obtain damages under one theory or another.   Knight's discipline was the

subject of almost all discovery and the entire first trial, because the overbreadth

claim and Section 105 claim had been dismissed on summary judgment.  The bulk

of the hours related to the overbreadth claim and the Section 105 claim were

expended on the first appeal, and Knight has already been paid for those hours.

It is true that a minority of Knight's time on his first appeal was spent on

Knight's § 101(a)(5) claim, and when this Court awarded attorney's fees, it did not

separate the fees attributable to the successful § 105 claim and overbreadth claim

from the fees attributable to Knight's disciplinary claim on which he had not yet

prevailed.  Yet Knight draws from this situation an absurd conclusion, namely, that

1003-079
37063

11

he is the "prevailing party" on his disciplinary claims regardless of whether he actually ever obtained any relief on those claims. This Court issued no opinion with its fee award, so Knight's purported knowledge about the reasoning behind the award is baseless.

Knight's position was argued to the district court on the first remand but was rejected. Knight argued to the district court that the fee award from this Court meant that he had prevailed on all claims and should receive damages and fees. However, the district court held in its July 30, 2009 opinion, "Knight 'may not recover for damages caused by actual imposition of the invalid sanction itself if [the ILA] demonstrate[s] that he would have been convicted and sanctioned even if he had been retried before an openminded tribunal.'" *Knight v. Int'l Longshoremen's Ass'n*, 639 F. Supp. 2d 437, 449 (D. Del. 2009), *quoting Feltington v. Moving Picture Mach. Operators Union Local 306 of I.A.T.S.E.,* 605 F.2d 1251, 1258 (2d Cir. 1979), *cert. denied,* 446 U.S. 943 (1980).

Thus, the logical inference is that the portion of that fee award attributable to Knight's LMRDA § 101(a)(5) claim was an interim award that would need to be repaid if the claim was ultimately unsuccessful—as it was. In its original brief, the ILA cited cases supporting the position that the portion of that award attributable to

Knight's ultimately unsuccessful § 101(a)(5) claim should be refunded to the ILA.

ILA's brief at 29-31.  Knight did not cite any cases to the contrary.

## B.    Damages Are Available Under LMRDA § 101(a)(5)

Knight tries several different arguments to get around the litany of case law

cited by the ILA showing that favorable interlocutory orders, such as a remand for

a new hearing, are not sufficient to make the plaintiff a prevailing party.[3]  Unable

to distinguish these cases, Knight argues that a remand for a new hearing is

different when it involves an LMRDA due-process claim, but he cites no authority

for this assertion.

Knight's contention to this Court is that only procedural relief is available

under § 101(a)(5), and damages are not available as a matter of law.  That is not

correct.  The LMRDA's due process requirement, like all procedural due process, is

intended to protect union members from unfair or undeserved discipline.  The

---

[3] Knight also makes contradictory arguments about what standard of review this
Court should apply.  Knight devotes a whole point heading to arguing that the
proper standard is abuse of discretion because the ILA filed a Rule 60 motion in
the lower court.  But elsewhere, Knight concedes that the ILA's appeal raises a
question of law:  "The applicable substantive law is the case law governing awards
of attorney's fees to prevailing plaintiffs in LMRDA cases."  Knight's brief at 27.
Knight also addresses the ILA's mandate arguments and does not disagree that this
Court's review is plenary.  Later Knight also specifically agrees with the ILA that
determination of prevailing party status is a question of law.  Knight's brief at 29.
Given that the two issues in this appeal are the interpretation of this Court's
mandate and the determination of prevailing party status, it is clear that this
Court's review is plenary.

1003-079
37063

Supreme Court has explained that "Procedural due process rules are meant to

protect persons not from the deprivation, but from the **mistaken** or **unjustified**

deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259 (1978)

(**emphasis added**).  Allowing union plaintiffs to recover attorney's fees even when

their discipline was proper and the procedural deficiency caused no injury would

turn this concept on its head.  The *Carey* case is analogous to union discipline

because it was a suit by a high school student suspended for smoking marijuana;

the student claimed that he was denied procedural due process because he was

suspended without an opportunity to respond to the charges against him.  The

Supreme Court held that the student could recover damages only if he proved

actual injury caused by the denial of his constitutional rights.  *Id.* at 264.  The

Court noted:  "Rights, constitutional and otherwise, do not exist in a vacuum. Their

purpose is to protect persons from injuries to particular interests . . . ." *Id*. at 254.

The Court opined in *Carey* that the failure to accord procedural due process could

not properly be viewed as the cause of the suspensions.  *Id.* at 260.  Thus, where no

injury is present, no damages can awarded.  Knight wants his procedural due

process rights to "exist in a vacuum." *See id.* at 254.

Relying upon the Supreme Court's opinion in *Carey*, the Second Circuit in

*Feltington* held that a plaintiff suing under LMRDA § 101(a)(5) could not recover

any damages for the discipline that was imposed on him if the union could show that an unbiased tribunal would have imposed the same sanction. *Feltington,* 605 F.2d at 1258.

Whenever faced with evaluating damages claims for procedural flaws in union disciplinary hearings under § 101(a)(5) of the LMRDA, federal courts have followed *Feltington. See, e.g.*, *Newell v. Int'l Bhd. Of Elec. Workers*, 789 F.2d 1186 (5th Cir. 1986) (plaintiffs suspended from union membership without hearing, Fifth Circuit held that the plaintiffs were properly suspended despite union's failure to give them hearing required by LMRDA and therefore were not injured or entitled to damages); *Serafinn v. Int'l Bhd. of Teamsters, Local Union No 722*, 2007 U.S. Dist. LEXIS 40731 (N.D. Ill. June 9, 2007); *Waring v. Int'l Longshoremen's Ass'n, Local 1414*, 665 F. Supp. 1576, 1583-1584 (S.D. Ga. 1987) (Plaintiff may not recover for damages caused by actual imposition of the invalid sanction itself if defendants demonstrate that he would have been convicted and sanctioned even if he had been retried in accordance with due process guarantees); *Bigbie v. Teamsters, Local 142*, 1983 U.S. Dist. LEXIS 19882 at *5 (N.D. Ill. January 20, 1983) ("Mere deprivation of a right does not give rise to a claim of damages. As in an action for violation of constitutional rights, actions under 29

1003-079
37063

15

U.S.C. § 412 are to compensate plaintiffs who have been harmed by the loss of a right… Plaintiffs have shown no injury and thus no right to compensation.").

Moreover, Knight's view would lead to absurd results.  Under Knight's argument, a union officer such as Knight would be able to receive attorney's fees for any lawsuit against his union in which he is able to point to some deficiency in his disciplinary procedure, regardless of whether the flaw affected the outcome of his hearing, and regardless of how serious his misconduct was, and irrespective of how much the discipline was otherwise reasonable and based upon reliable evidence.  For instance, a union officer who had taken bribes or embezzled money could be a "prevailing party" on a claim against the union if he files suit and successfully shows some error in notice or recording the hearing, regardless of whether he was actually guilty of the misconduct.

It is not—as Knight would have this Court believe—that damages are **unavailable** under § 101(a)(5), it is just that they need to be proved.  Knight did not establish that his sanction was invalidly imposed so he could not receive damages.  Knight failed not because § 101(a)(5) presented some legal obstacle, but because the facts did not support his claim.  Likewise, damages for emotional distress and injury to reputation are also available under § 101(a)(5).  Knight tried to prove both emotional distress and injury to reputation at both trials but he

1003-079
37063

16

ultimately failed.[4]  Knight was completely unsuccessful in obtaining any of the

relief available to him, but now he tries to hide his failure behind the complete

fiction that damages are not an available form of relief under LMRDA § 101(a)(5).

## C.    There Was Only One Due Process Claim

Knight's dilemma is that the vast majority of the billable hours in this

lawsuit were spent in an attempt to obtain damages related to his discipline under a

variety of different theories, but all those theories ended up being unsuccessful.  In

order to preserve as many hours as possible, Knight pretends that his due process

claim was actually two entirely separate claims. According to Knight's scenario, he

is entitled to receive all hours billed up to a certain point in time because he

supposedly prevailed on the "first" due process claim even while conceding defeat

on the "second" due-process claim.  Knight's theory is belied by the record in this

case.

Having set up this straw man, Knight contends that all he ever cared about in

the "first" due process claim was the legal ruling on procedure, and he never

sought to be acquitted of the disciplinary charges brought against him.  Knight's

---

[4] There are also cases where plaintiffs were able to obtain injunctive relief under LMRDA § 101(a)(5).  *See, e.g., Stodhill v. Serv. Employees Int'l Union, Local 50*, 192 F.3d 1159 (8th Cir. 1999).

brief at 3.  Knight's revisionist argument is contradicted by his own amended

complaint, which states as follows:

> This is an action under the Labor-Management Reporting and
> Disclosure Act of 1959 (LMRDA) for a court order requiring the
> defendant International Longshoremen's Association ("ILA") to: 1)
> restore plaintiff Edward Knight, with full back pay, to his rightful
> position as the elected Financial Secretary of ILA Local 1694, in
> Wilmington, DE;  . . . Plaintiffs also seek compensatory damages, an
> award of attorneys' fees and costs, and other appropriate relief.

(A-42).

Knight's § 101 (a)(5) claim was only one of several  vehicles that he used in

his attempt to overturn his union discipline and obtain damages.[5]  Knight's

amended complaint alleged that Knight's discipline was in violation of three

separate sections of the LMRDA: Sections 101(a)(2), 101(a)(5), and 609.  (A-44).

Knight's § 101(a)(2) and § 609 claims were dismissed on summary judgment,

*Knight v. Int'l Longshoremen's Ass'n*, 286 F. Supp. 2d 360, 368-369 (D.Del. 2003),

but Knight managed to resurrect them at trial when they were dismissed against

and not appealed.  Knight's § 101(a)(5) due process claim stayed alive longer than

Knight's other legal theories, but only because Knight mutated the claim several

times as the case progressed.  As stated in his original complaint, Knight's due-

---

[5] On page 4 of his brief, Knight makes the representation that this case was
bifurcated into a liability phase and a damages phase.  No such bifurcation ever
took place.  Knight's claims for damages were tried at the first trial, *see Knight*,
375 F. Supp. 2d 351, 354 (D. Del. 2005), and then were tried again on remand.

process claim was premised only on an alleged lack of notice. Not until trial did Knight add two new perceived procedural flaws: the undisputed fact that Knight was not allowed to record the hearing; and the contention that statements made at trial by one of the committee members indicated bias toward Knight.

Similarly, the amended complaint's prayer for relief sought an order requiring defendant ILA to terminate immediately Knight's suspension from union office and reinstatement with full back pay and benefits, with interest, together with restitution of the $500 plus other compensatory damages. (A-48).

Knight's argument is further belied by his behavior throughout this case, in which he continually argued for reversal of his union discipline together with compensatory and punitive damages. Knight argued vigorously at the first trial that his discipline was improper and that he was entitled to damages. *Knight*, 375 F. Supp. 2d at 351.

When this case was remanded the first time, Knight specifically asked the district court **not** to order a new hearing but instead sought a judgment awarding compensatory and punitive damages as relief on his LMRDA § 101(a)(5) claim. ("Plaintiff's Response to Defendant ILA's Proposed Procedure," Case 1:01-cv-00005-LPS, Doc. 115, Filed 01/23/07, at 18). In effect, Knight contended that he had won his claim and he was entitled to a final judgment awarding him money

1003-079
37063

19

damages.  The district court rejected Knight's arguments refusing to grant him his requested relief and ordered a new disciplinary hearing.

At the second disciplinary hearing he again argued vehemently that his discipline should be undone.  Knight never filed an amended claim or new pleading after the second disciplinary hearing.  Rather, he argued that he was entitled to damages for his allegedly improper discipline:  lost wages, emotional distress, injury to reputation, lost opportunity and punitive damages—totaling almost half a million dollars.  *Knight v. Int'l Longshoremen's Ass'n,* 724 F. Supp. 2d 480 (D. Del. 2010).  It cannot be seriously said that all Knight wanted was declaration that the ILA hearing procedures were deficient, and that he never sought to rescind his discipline or receive a damage award.

Ultimately, Knight was unsuccessful in overturning his discipline and did not obtain any damages under **any** of his various legal theories.  His due-process claim stayed alive longer than the other theories.  Although he could not prove the notice issue that he pleaded in his complaint, he was able to show two new deficiencies on appeal.  But ultimately his claim failed because he could not show any compensable injury.  In that regard, Knight's argument about the number of claims he brought is a red herring.  Whether he brought one due process claim or five does not matter, because at the end of the day, he did not obtain any of the

1003-079
37063

damages he sought and cannot say he obtained the actual relief on the merits that the Supreme Court requires for him to be a prevailing party.

## D.    Knight Cannot Distinguish the ILA's Cited Cases

Knight disparages the cases cited by the ILA as if the favorable legal rulings obtained by the plaintiffs in those cases only involved peripheral issues such as evidence or discovery, or rules of procedure.  On the contrary, most of the cases cited in the ILA's brief involved favorable legal rulings on the actual merits of the plaintiff's claims, just as Knight obtained in this case.  However, like Knight, the plaintiffs in the cited cases were unable to convert their favorable ruling into an enforceable judgment awarding actual relief on the merits that directly benefited them at the time of judgment.

Knight also pretends that the cases cited by the ILA involve favorable legal rulings that were completely overturned at a later point in the litigation, but that is not true either.  Many of the cases the ILA cited were exactly the same as Knight's situation: they involved plaintiffs who obtained favorable legal rulings on the merits of their claim which were never overturned, but also never led to enforceable judgments providing actual relief that materially altered the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefited the plaintiffs at the time of judgment.

The *Hewitt v. Helms* case was also brought as a claim for violation of procedural due process, and the Supreme Court held the contrary of what Knight is arguing here. In *Hewitt* this Court had ruled that the plaintiff Helms's due process rights had been violated by his prison disciplinary hearing and remanded to the lower court "to determine the appropriateness and availability of the requested relief." *Hewitt*, 482 U.S. at 760, *quoting Helms v. Hewitt*, 655 F.2d 487, 503 (3d Cir. 1981). On remand, the district court ruled in the defendants' favor based upon a defense of qualified immunity, so that the plaintiff received no damages or permanent injunction. This Court awarded attorney's fees, but the Supreme Court reversed. The Supreme Court held that this Court's favorable ruling and remand did not mean the plaintiff had prevailed. The Supreme Court did *not* reverse this Court's ruling that Helms's due process rights had been violated, but it ruled that the plaintiff was not entitled to a fee award because this Court's remand had never led to actual relief.

Knight's situation is identical. Both Knight and Helms brought due-process claims involving their respective disciplinary hearings. Both initially lost at the lower court but an appeal received a favorable decision that their rights had been violated by the disciplinary hearing and a remand of the case to the district court. Both Knight and Helms ultimately were unsuccessful in getting damages or

1003-079
37063

22

injunctive relief, but still sought attorney's fees based on the appellate victory. It is

clear the Knight cannot be entitled to such an award for the same reason that

Helms was not: the favorable ruling and remand never resulted in actual relief.

### E.    The Remand Did Not Alter
####       The Legal Relationship Between The Parties

Knight's argument about his entitlement to fees on his disciplinary claims

focuses on different interim legal rulings he obtained during the course of the

litigation. However, it does not matter what part of the history of the case Knight

focuses on, he cannot change his ultimate failure to obtain the relief he sought.

Remands for a new hearing from a district court are no different than

remands from an appellate court in that they cannot form the basis of an award for

attorney's fees. *See, e.g., Sullivan v. Hudson,* 490 U.S. 877, 886-87 (1989) (district

court's remand to the agency for further administrative proceedings does not make

social security claimant a prevailing party when remand order does dictate the

receipt of benefits); *Vaughn v. Principi*, 336 F.3d 1351, 1357 (Fed. Cir. 2003)

("This court agrees with the Veterans' Court's conclusions that appellants' remands

are not judgments on the merits or consent decrees or similar results that qualify as

prevailing under EAJA."); *see also Hardt v. Reliance Std. Life Ins. Co.,* 336 Fed.

Appx. 332, 336 (4th Cir. 2009) (district court's remand to insurance company for

reconsideration of claim for benefits not sufficient to make plaintiff prevailing

1003-079
37063

23

party), *rev'd on other grounds*, *Hardt v. Reliance Std. Life Ins. Co.,* 560 U.S. 242, 253-254 (2010).

The district court's remand to the ILA had none of the indicia required by the Supreme Court cases to be considered actual relief on the merits. It was not a final judgment. It did not alter the legal relationship between the parties because Knight's discipline was still in place. Nor did it give Knight any of the relief he was seeking: compensatory and punitive damages. The final outcome of Knight's claims against the ILA was still contingent upon Knight's second disciplinary hearing. *Knight*, 639 F. Supp. 2d at 449.

Knight refers to the district court's remand to the ILA as an "injunction," but Knight points to no case where a remand for further proceedings is described as injunctive relief, and the district court's remand to the ILA never used the word "injunction." Knight describes the district court's remand order this way because he wants to make that order appear to be the "relief" that will render him a prevailing party. Knight then says that the district court's remand order "materially altered the legal relationship" between him and the ILA.

Other than merely quoting from the *Buckhannon* case, Knight fails to come to grips with the *Buckhannon* analysis and does not show how the district court's remand for a new disciplinary hearing actually effected "a material alteration of the

1003-079
37063

24

legal relationship of the parties." *Buckhannon*, 532 U.S. at 604. After the remand order, Knight was in no different position with respect to the ILA than he was before the lawsuit was filed: his discipline was still in place and he had not yet recovered any damages and could enforce no injunction against the ILA with respect to his discipline.

As this Court held in *Swietlowich v. County of Bucks*, 620 F.2d 33 (3d Cir. 1980): "In the case at bench, by contrast, the earlier opinion of this court did nothing to advance the plaintiff's claim for relief . . . and there is no assurance that she will ever receive damages, the only relief requested. At this point, therefore, the plaintiff has not prevailed within the meaning of 42 U.S.C. § 1988." *Id*. at 34.

Knight also argues that the district court's remand altered his legal relationship with the ILA because it required the ILA to hold a new hearing and to correct the procedural deficiencies of the previous hearing.[6] In other words, the remand order was almost identical to any of the remand orders in the cases cited by the ILA. Any remand for a new hearing or trial would necessarily require that the new hearing be held under different procedures or circumstances. As the Supreme

---

[6] Knight acts as though the choice of a new hearing officer was forced upon the ILA by the district court, but the opposite is true. The ILA suggested the Hon. Milton E. Mollen as a hearing officer to put any claim of bias to rest and to force Knight to defend his conduct on the merits. The district court agreed with the ILA's suggestions. (Defendant's Reply Memorandum In Support Of Its Proposed Procedure, Case No. 1:01-cv-0005-LP, Doc. #121, Filed 2/16/07, at 11-13).

Court observed in the context of Social Security remands: "Where a court finds that the Secretary has committed a legal or factual error in evaluating a particular claim, the district court's remand order will often include detailed instructions concerning the scope of the remand, the evidence to be adduced, and the legal or factual issues to be addressed." *Sullivan,* 490 U.S. at 885.

Yet the Supreme Court in *Sullivan* also noted that simply obtaining a detailed remand order was not sufficient to render the plaintiff a prevailing party where the remand order mandated a new proceeding. *Sullivan*, 490 U.S. at 887 ("We think it clear that under these principles a Social Security claimant would not, as a general matter, be a prevailing party within the meaning of the EAJA merely because a court had remanded the action to the agency for further proceedings.").

As the Supreme Court also observed in *Sullivan*, it is possible that a remand order could dictate specific relief instead of simply a new hearing, but that is **not** what the district court ordered in this case. All the district court ordered was a *de novo* hearing on the disciplinary charges against Knight; it did not reinstate Knight to office or order the payment of damages or restitution. It is ironic that Knight now describes the district court's remand order as enforceable relief because that order was the exact opposite of what Knight requested from the court.

When this case was remanded the first time, Knight specifically asked the district court **not** to order a new hearing but instead to enter a judgment awarding compensatory and punitive damages as relief on his LMRDA § 101(a)(5) claim. ("Plaintiff's Response to Defendant ILA's Proposed Procedure," Case 1:01-cv-00005-LPS, Doc. 115, Filed 01/23/07, at 18).  Knight contended that he had won his claim and he was entitled to a final judgment awarding him money damages.

The district court rejected Knight's arguments refusing to grant him his requested relief and ordered a new disciplinary hearing.  This Court has previously observed that obtaining the sought-after relief is a key aspect of being a prevailing plaintiff:  "If [a plaintiff] essentially succeeds in obtaining the relief he seeks in his claims on the merits, the plaintiff becomes a prevailing party."  *Swietlowich,* 620 F.2d at 34; *see J.C. v. Mendham Twp. Bd. of Educ.,* 29 F. Supp. 2d 214, 220-221 (D.N.J. 1998) (Plaintiffs' lawsuit forced defendant to comply with statutory procedural mechanism but they were not entitled to attorney's fees because "plaintiffs have achieved a very small portion of their desired relief" and have not altered the legal relationship).  Conversely, Knight's failure to obtain the relief he requested in his complaint shows that he is not a prevailing party.

**CONCLUSION**

For all the foregoing reason the Appellant ILA respectfully urges that its appeal be granted, that the district court's decision be reversed, that the award of attorney's fees be vacated.

Date: May 5, 2014

Respectfully submitted,

/s/John P. Sheridan
Kevin Marrinan
John P. Sheridan
MARRINAN & MAZZOLA
  MARDON, P.C.
26 Broadway, 17th Floor
New York, New York 10004
(212) 425-3240
kmarrinan@mmmpc.com
jsheridan@mmmpc.com

*Attorneys for Defendant/Appellant*
*International Longshoremen's*
*Association, AFL-CIO*

1003-079
37063

28

## CERTIFICATION OF BAR MEMBERSHIP

Kevin Marrinan and John P. Sheridan certify that they are members of the

bar of the United States Court of Appeals for the Third Circuit.


Dated:  May 5, 2014


| /s/Kevin Marrinan | /s/John P. Sheridan |
|---|---|
| Kevin Marrinan | John P. Sheridan |

## CERTIFICATE OF COMPLIANCE WITH
## FED. R. APP. P. 32(a) and L.A.R. 31.1.

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements:

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

> this brief contains 6,514 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. R. 32(a)(5) because:

> this brief has been prepared in a proportionally spaced typeface, using Microsoft Word 2010 14 Point, Times New Roman.

Certificate of Compliance with Electronic Filing Requirements:

1.    This brief complies with the electronic filing requirements of L.A.R. 31.1(c) because:

> a.  the text of this electronic brief is identical to the text of the paper copies

> b.  the Symantec Anti-Virus detection program has been run on the file containing the electronic version of this brief and no viruses have been detected.

Dated: May 5, 2014

/s/John P. Sheridan
John P. Sheridan

1003-079
37063

**AFFIDAVIT OF SERVICE**

DOCKET NO.  13-4260

-----------------------------------------------------------------------------X

Eddie McBride, et al.,

              vs.

International Longshoremen's Association, et al.

-----------------------------------------------------------------------------X

       I, Mariana Braylovskiy, swear under the pain and penalty of perjury,  that according to law and being over the age of 18, upon my oath depose and say that:

           on **May 5, 2014**

       I served the within **Reply Brief for Defendant-Appellant** in the above captioned matter upon:

Michael J. Goldberg
73 Harrowgate Drive
Cherry Hill, NJ 08003
302-477-2712
mjgoldberg@comcast.net

Perry F. Goldlust
702 King Street
P.O. Box 1675, Suite 600
Wilmington, DE 19899
302-483-2000
pgoldlust@pfgoldlust.com

*Attorneys for Appellees*

via **electronic filing and electronic service**. All counsel of record in this case are registered CM/ECF users. Filing and service were performed by direction of counsel.

Unless otherwise noted, 7 copies have been sent to the court on the same date as above for filing via Express Mail.

**Sworn to before me on May 5, 2014**

/s/ Robyn Cocho                                  /s/ Mariana Braylovskiy
Robyn Cocho                                      Mariana Braylovskiy
Notary Public State of New Jersey
No. 2193491
Commission Expires January 8, 2017

                                  Job # 253316